IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ANTHONY WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:24-cv-586 (RDA/WEF) |
| | ) | |
| PATIENT ACCESS NETWORK | ) | |
| FOUNDATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Patient Access Network Foundation's Partial Motion to Dismiss. Dkt. 19. This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendant's Memorandum in Support (Dkt. 20), Plaintiff's Opposition Brief (Dkt. 24), and Defendant's Reply Brief (Dkt. 25), this Court will GRANT-IN-PART and DENY-IN-PART the Motion for the reasons that follow.

### I.  BACKGROUND

#### A.  Factual Background[1]

Plaintiff is an African American man "with dark skin." Dkt. 10 ¶¶ 8-9. Plaintiff was employed by CareMetx, LLC, a contractor for Defendant, as a Quality Assurance Auditor

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

servicing Defendant. *Id.* ¶ 13. Plaintiff's responsibilities included quality assurance, training new hires, and reporting on client interactions. *Id.* ¶ 14.

In November 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging that CareMetx discriminated against him on the basis of race, color, and sex. *Id.* ¶ 15 (the "2019 Charge"). That charge ultimately settled. *Id.* In particular, the 2019 Charge alleged that Robin Charity and Richard Citrenbaum discriminated against Plaintiff when they hired a White, woman of Hispanic ethnicity for a position for which Plaintiff had applied. *Id.* ¶¶ 15-16.

In April 2021, Defendant acquired CareMetx staff. *Id.* ¶ 18. The only change to Plaintiff's position with respect to the acquisition was that Plaintiff transitioned from remote work once or twice a week to being "almost entirely remote." *Id.* ¶ 19.

Plaintiff's direct supervisor was Charity, an African American woman. *Id.* ¶ 22. Charity's supervisor was Citrenbaum, a Caucasian male who was the Vice President of Operations. *Id.* ¶ 23. Plaintiff alleges that he understood that Citrenbaum harbored a "personal dislike" for Plaintiff. *Id.* ¶ 27. Charity would frequently inform Plaintiff that Citrenbaum "did not like him." *Id.* ¶ 28. Plaintiff asserts, "[u]pon information and belief, Mr. Citrenbaum did not like Mr. Ward on account of his color (black), race (African-American), and sex (male), all of which Mr. Citrenbaum was aware of from the onset of Mr. Ward's employment." *Id.* ¶ 29. Plaintiff further alleges, "[u]pon information and belief, Mr. Citrenbaum did not like Mr. Ward on account of his prior filing with the EEOC regarding allegations of color (and race) discrimination." *Id.* ¶ 30.

Citrenbaum required Plaintiff's team to meet a requirement to ensure that call center agents received "at least 90% scores to qualify for their yearly bonus." *Id.* ¶ 33. Plaintiff alleges, "[u]pon information and belief, that Mr. Citrenbaum imposed this requirement on Mr. Ward's team

because Mr. Ward was on it." *Id.* ¶ 34.  In response to Plaintiff raising concerns regarding Citrenbaum, Charity said, "you know how white people are" and told Plaintiff that "you can't have them thinking you're smarter than them." *Id.* ¶ 39.

On one occasion, Plaintiff called Citrenbaum by his first name – Richard – and was informed that Plaintiff should call him "Rich" on account of his Jewish heritage. *Id.* ¶ 40.  On one occasion, Charity told Plaintiff that Citrenbaum favored her "because she was light-skinned" and because "she knew how to get along with white people and Jewish people." *Id.* ¶ 41.  On multiple occasions, Citrenbaum would tell Plaintiff to smile more, and on one occasion told Plaintiff that he did not like Plaintiff's "dark tone." *Id.* ¶ 43.  Charity warned Plaintiff, "as a black man, you have to be careful." *Id.* ¶ 45.  When Plaintiff asked Charity why Citrenbaum may not like him, she responded by pointing to her skin, indicating that it was due to Plaintiff's skin color. *Id.* ¶¶ 46-47.

In 2023, Plaintiff was assigned to train two new hires who were both white women. *Id.* ¶¶ 48-49.  Plaintiff alleges, "[u]pon information and belief, these two new hires were brought in and quickly promoted on account of Mr. Citrenbaum's prejudices." *Id.* ¶ 51.  On April 24, 2023, Brandon Budoo, an African American male Operations Supervisor, wrote Plaintiff that he was "sick" of him. *Id.* ¶ 52.  On May 8, 2023, Jeanine Jones, the African American female Vice President of Human Resources and Training, told Charity that she did not like Plaintiff using the word "backside" during the training and that she did not like that he did not have his camera on. *Id.* ¶ 53.  At a training session that same day, Gregory Perkins, an African American male Training Specialist, stated "We know Anthony is intimidating." *Id.* ¶ 54.

On May 10, 2023, Charity informed Plaintiff that Jones wanted her to give Plaintiff a "Memo of Conversation." *Id.* ¶ 57.  Plaintiff asked Charity not to write a Memo of Conversation

3

and asserted that this conduct was reminiscent of the conduct that spurred his 2019 Charge. *Id.* ¶ 59. Plaintiff then followed up with Human Resources to request company policies regarding Memos of Conversation. *Id.* ¶ 60. The company policy provides that, upon becoming aware of an incident, a manager has one to three days to converse with the employee and then must submit a Memo of Conversation within five days. *Id.* ¶ 61.

Jones declined to meet with Plaintiff so Plaintiff emailed Jones that he would meet with Charity instead. *Id.* ¶ 62. On May 15, 2023, Plaintiff spoke with Charity. *Id.* ¶ 63. Plaintiff reiterated that "[t]his feels like everything that was being done to me before." *Id.* ¶ 64. Charity apparently responded by laughing: "I know, I know . . . LAWSUIT!!!" *Id.* ¶ 65. Charity further stated that Plaintiff should "not go down that path." *Id.* ¶ 66. Charity also reminded Plaintiff that Citrenbaum did not like Plaintiff. *Id.* ¶ 67. Charity assured Plaintiff that she would not write a Memo of Conversation, but then, on May 16, 2023, Plaintiff received a Memo of Conversation. *Id.* ¶¶ 71-72. Plaintiff declined to sign the Memo of Conversation. *Id.* ¶ 73.

On May 17, 2023, Jones emailed Plaintiff alleging that Plaintiff declined to meet with her on May 10, 2023. *Id.* ¶ 74. That same day, Plaintiff submitted an inquiry to the EEOC. *Id.* ¶ 75.

On May 18, 2023, Plaintiff's coworkers were instructed, by an unidentified person, not to respond to Plaintiff in chats or emails. *Id.* ¶ 76.

On May 19, 2023, a meeting was held between Plaintiff, Charity, Jones, and Citrenbaum. *Id.* ¶ 77. There, Plaintiff was asked why he declined to sign the Memo of Conversation and Plaintiff responded that he was not obligated to sign. *Id.* ¶¶ 78-79. Jones also stated that "Charity claimed that Mr. Ward said he would have the company cut a check per the hostile work environment." *Id.* ¶ 80. Jones then said that, if Plaintiff went to the EEOC, Plaintiff would be

terminated. *Id.* ¶ 81.  Thereafter, Jones told Plaintiff to sign the Memo of Conversation four more times. *Id.* ¶ 84.

On May 20, 2023, Plaintiff received a written warning for not attending an optional meeting. *Id.* ¶ 85.  In response, Plaintiff informed Charity that the meeting was not mandatory. *Id.* ¶ 86.  Plaintiff stated that she had to put something down and that Plaintiff was being targeted. *Id.* ¶ 87.  Plaintiff refused to sign the warning. *Id.* ¶ 88.

On June 6, 2023, Jones sent Plaintiff a chat asking Plaintiff if he was going to sign the Memo of Conversation. *Id.* ¶ 90.  In response, Plaintiff stated that he felt harassed and bullied and further declined to sign. *Id.* ¶ 91.

On June 9, 2023, Charity stated in front of a female employee that she was worried about Plaintiff's mental health. *Id.* ¶ 92.  Plaintiff replied that he would speak to a therapist. *Id.* ¶ 93. The female employee laughed. *Id.* ¶ 94.  Plaintiff then scheduled mental health retreats from June 20, 2023 through June 30, 2023, using his paid time off ("PTO"). *Id.* ¶ 96.

On July 21, 2023, Budoo messaged Plaintiff calling him "Captain Petty." *Id.* ¶ 97.  In August 2023, Charity warned Plaintiff not to go to human resources. *Id.* ¶ 98.

On September 11, 2023, Perkins mocked Plaintiff's deep voice at a training class. *Id.* ¶ 99. After the class, Plaintiff informed Charity that it made him feel embarrassed. *Id.* ¶ 101.  Charity responded, "Don't be sensitive," and again warned Plaintiff not to go to human resources. *Id.* ¶ 102.

On October 13, 2023, several women received recognition for completing a project on which Plaintiff also worked. *Id.* ¶ 103.  Plaintiff asked Charity why he was not recognized, and she replied: "Because of black girl magic." *Id.* ¶ 104.

On October 26, 2023, Plaintiff returned from lunch to a training program twenty minutes late. *Id.* ¶ 105. Citrenbaum asked where Plaintiff was, and Plaintiff responded: "the bathroom." *Id.* On October 27, 2023, Citrenbaum and Jones told Plaintiff that he was terminated based on his lateness. *Id.* ¶ 106. Plaintiff told Citrenbaum and Jones that he informed colleagues that he was going to the bathroom. *Id.* ¶ 107. Plaintiff further asserted that the training was not required. *Id.* ¶ 108. Plaintiff believes that, on October 26, 2023, Citrenbaum was monitoring Plaintiff. *Id.* ¶¶ 109-110.

On January 11, 2024, after Plaintiff filed his EEOC Charge, the EEOC issued a Right to Sue Letter. *Id.* ¶ 6 (the "2024 Charge"); Dkt. 10-1.

## B.   Procedural Background

Plaintiff filed his Complaint on April 10, 2024. Dkt. 1. On May 14, 2024, Defendant filed a motion to dismiss. Dkt. 7. Thereafter, Plaintiff filed his Amended Complaint, and the Court therefore denied the motion to dismiss as moot. Dkts. 10, 23.

On June 18, 2024, Defendant filed the pending Motion to Dismiss. Dkt. 19. On July 2, 2024, Plaintiff filed his Opposition Brief. Dkt. 24. On July 8, 2024, Defendant filed its Reply Brief. Dkt. 25.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual

allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## III. ANALYSIS

Plaintiff's Amended Complaint asserts four causes of action: (i) unlawful discrimination on the basis of race, color, and gender under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII") (Count I); (ii) a retaliation claim under Title VII (Count II); (iii) unlawful discrimination in violation of 42 U.S.C. § 1981 (Count III); and (iv) a retaliation claim under Section 1982 (Count IV). Dkt. 10.

The introduction to Defendant's Memorandum in Support of its Motion to Dismiss does not comport with the argument contained therein. *Compare* Dkt. 20 at 2 *with id.* at 5-10. The introduction appears to seek dismissal of Counts I, II, and IV, whereas the argument section asserts only that Plaintiff has failed to state a claim for discrimination under Title VII based on race, color,

7

or gender/sex in Count I. Thus, it is apparent that Defendant seeks to dismiss only the claims contained in Count I.[2]

## A.     Color Discrimination

As an initial matter, it is important to recognize that there is a distinction between race and color discrimination claims. The Fourth Circuit has explained: "Color discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 n.5 (4th Cir. 2002). Thus, race and color discrimination claims are distinct from one another and must be analyzed separately.

Both parties agree that a plaintiff ultimately states a claim for discrimination where a plaintiff alleges facts giving rise to an inference of discrimination. Dkt. 20 at 5; Dkt. 24 at 4, 8. Here, Plaintiff has done so with respect to his claim of color discrimination. When Plaintiff

---

[2] Defense counsel is advised that future filings should be clear about what specific claims Defendant is challenging. It was difficult for the Court to discern what counts Defendant sought to dismiss because, as noted, the introduction and the argument sections were not consistent with one another. Although the introduction to the Memorandum in Support of the Motion to Dismiss suggested that Defendant sought to dismiss the race- and sex-based claims under both Title VII and Section in certain Counts (which themselves did not match the Counts in the Amended Complaint), the argument section does not address the Section 1981 claims at all. And, even within the argument section, there were cross-references that did not align with one another. *See, e.g.*, Dkt. 20 at 5, 7 (under the subheading "Plaintiff fails to State a Claim for Race or Color Discrimination under Title VII" Defendant argues "to the extent that Plaintiff relies on these allegations to form the basis of his disparate treatment race and *sex* claims, his claims must fail, and any potential disparate treatment claim must be limited to his termination" (emphasis added)). The Reply Brief indicates, however, that Defendant seeks only to dismiss the claims contained in Count I. Dkt. 25 at 2 (asserting that Defendant "requests that the Court dismiss Count I of Plaintiff Anthony Ward's First Amended Complaint with prejudice"). Accordingly, based on the arguments *actually made* in the Memorandum in Support and the Reply Brief, the Court views the Motion to Dismiss as only seeking to dismiss the claims in Count I.

discussed his work environment with Charity (his supervisor), Charity informed Plaintiff that "Mr. Citrenbaum was favorable to her because she was light-skinned." Dkt. 10 ¶ 41. Charity also explained Plaintiff's treatment by "pointing to her skin color, referencing clearly that it was on account of color." *Id.* ¶ 47. Moreover, Charity warned Plaintiff that, "as a black man, you have to be careful," and that, "as a dark-skinned African-American, you can't have [white people] thinking you're smarter than them." *Id.* ¶¶ 39, 45. Plaintiff's allegations that a managerial employee (namely, Charity) is describing the actions of the decision-maker with respect to Plaintiff's termination as favoring her because she is light-skinned and referencing decisions being made on the basis of color give rise to a reasonable inference of discrimination based on color. Accordingly, Plaintiff has plausibly alleged a color discrimination claim and the motion to dismiss will be denied in this regard.[3]

### B.   Race Discrimination

Defendant fares better with respect to its arguments regarding Plaintiff's race discrimination claim. As noted, race and color discrimination are distinct claims and rest upon different factual predicates. Although Plaintiff need not plead a *prima facie* case, Plaintiff must plead facts which support an inference of race discrimination so as to plausibly state a claim. *See*

---

[3] Defendant also makes an argument regarding what conduct qualifies as an adverse employment action. Dkt. 20 at 6. To the extent Defendant argues that this is another basis on which to dismiss Plaintiff's claim, Plaintiff has clearly alleged an adverse employment action with respect to his termination. Defendant is correct, however, that the alleged criticisms and Memo of Conversation (without any further disciplinary action being taken) do not qualify as adverse employment actions. *See Bush v. MAG DS Corp.,* No. 1:18-CV-615, 2020 WL 201044, at *3 (E.D. Va. Jan. 13, 2020) ("A written warning does not constitute an adverse employment action because it does not affect the terms, conditions, or benefits of employment"). Plaintiff acknowledges that warnings and criticisms do not constitute adverse employment actions but argues that such facts are appropriately included for context and to adequately allege bias. *See* Dkt. 24 at 4. Accordingly, this is not a basis to dismiss Plaintiff's color discrimination claim.

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002) (noting that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement"); *but see also Iqbal*, 556 U.S. at 680 (holding that plaintiffs are required to plead facts that "nudge" their claims "across the line from conceivable to plausible"). Here, Plaintiff has not alleged facts that plausibly state a claim for race discrimination under Title VII.

Unlike Plaintiff's allegations of color discrimination which are based on specific allegations regarding what Charity told Plaintiff, Plaintiff's allegations of race discrimination are speculative and based on "information and belief." Dkt. 10 ¶ 29 ("Upon information and belief, Mr. Citrenbaum did not like Mr. Ward on account of his . . . race (African-American)"); *see also id.* ¶¶ 38, 51, 56 (other factual allegations regarding race discrimination are again based "upon information and belief"). Such allegations are insufficient to support a plausible claim of race discrimination. *See, e.g., Carter v. Va. Dep't of Game & Inland Fisheries*, No. 3:16-cv-661, 2018 WL 3614975, at *9 (E.D. Va. July 27, 2018) (holding that allegations based on information and belief "veer away from supporting plausible inferences, and turn instead toward unsupportable conclusory talismanic statements"). Plaintiff's allegations regarding similarly situated employees being treated differently are also conclusory and deficient. Dkt. 10 ¶ 37 ("Upon information and belief, Mr. Citrenbaum did not impose this requirement on other similarly situated employees in other teams."). To rely on similarly situated persons being treated differently, a plaintiff must allege facts demonstrating that the two groups are, in fact, similarly situated. *See Altuzarra v. Loudoun Cnty. Sch. Bd.*, No. 1:19-cv-1127, 2020 WL 13690343, at *4 (E.D. Va. May 5, 2020) (recognizing that "[s]imilarly situated employees must be similarly-situated 'not just in *some* respects, but similarly-situated *in all respects*'" (emphasis original)). Here, Plaintiff has alleged no facts from which this Court could determine that any group was similarly situated.

Finally, Plaintiff's conclusory allegations regarding race discrimination are contradicted by the other allegations in his Amended Complaint, which indicate that Citrenbaum did not hold animus against African Americans, but instead favored lighter-skinned African American employees. Dkt. 10 ¶¶ 22, 24-27 (supervisors Budoo, Perkins, Jones, and Charity are all African American); *id.* 41 (Charity who is African American informed Plaintiff that "Citrenbaum was favorable to her because she was light-skinned"). Thus, taken together, Plaintiff has not alleged facts sufficient to plausibly state a claim for race discrimination that is separate and distinct from his color discrimination claim. Accordingly, the Court will grant the motion to dismiss in this regard.[4]

## C.    Sex Discrimination[5]

As with Plaintiff's race discrimination claim, many of Plaintiff's sex discrimination claims are alleged "upon information and belief." Dkt. 10 ¶ 29 ("Upon information and belief, Mr. Citrenbaum did not like Mr. Ward on account of his . . . sex (male) . . ."); *id.* ¶ 51 ("Upon

---

[4] Plaintiff also attempts to rely on an allegation that Citrenbaum told Plaintiff to smile more and that he did not like Plaintiff's "dark tone" to support Plaintiff's claims of race and color discrimination. Dkt. 10 ¶¶ 43-44. Given the combination of being told to smile as well as the remark on tone, the Court does not find Plaintiff's inference that "dark tone" refers to race or color persuasive given that the ordinary meaning of "tone" is a vocal or pitch quality. *See* Merriam-Webster Dictionary, Tone, *available at* https://www.merriam-webster.com/dictionary/tone. Even assuming *arguendo* that "dark tone" was intended to refer to Plaintiff's skin color, this allegation would support Plaintiff's claim of color discrimination rather than his claim of race discrimination.

[5] Defendant argues that Plaintiff's gender/sex discrimination claim should be dismissed because Plaintiff uses the term "gender discrimination" rather than the statutory "sex discrimination." Dkt. 20 at 2 n.1. As the Fourth Circuit has recognized, however, the terms are frequently used interchangeably. *See Bauer v. Lynch*, 812 F.3d 340, 347 n.9 (4th Cir. 2016) (recognizing that, although "it may be useful to disaggregate the definition of 'gender' from 'sex' for some purposes . . .[,] courts have frequently used the term 'sex' and 'gender' interchangeably to refer simply to the fact that an employee is male or female"). Given the frequency with which the terms "gender" and "sex" are used interchangeably and the Fourth Circuit's commentary in *Bauer* and given the lack of citation to any case authority by Defendant, the Court will decline Defendant's invitation to dismiss Plaintiff's gender/sex discrimination claims on this basis.

information and belief, these two new hires were brought in and quickly promoted on account of Mr. Citrenbaum's prejudices in favor of lighter-skinned individuals, prejudices in favor of females, and prejudices against African-American black males."). Again, such allegations are insufficient to state a plausible claim for discrimination. *Carter*, 2018 WL 3614975, at *9.

In particular, the allegations regarding the two new hires fail to demonstrate any discrimination based on sex, because there are no allegations regarding these employees' positions, whether they were competing with any men for promotions, or any of their relative qualifications. Without any supporting facts, Plaintiff's allegations rest on pure speculation. *See Altuzarra*, 2020 WL 13690343, at *4 (finding comparators must be alike in all material respects). Likewise, Plaintiff speculates as to the motives of other people when he assumes that, when Charity and another employee laughed at him, it was "disparaging him on account of his sex for not being manly enough to handle his mental or emotional state." Dkt. 10 ¶ 95. The inference that Plaintiff seeks to make there is not warranted without further supporting factual allegations, even on a motion to dismiss. *See Kinnett v. Key W + Sotera Defense Solutions*, No. 5:18-cv-110, 2019 WL 4023192, at *6 (W.D. Va. July 19, 2019) (finding that plaintiff's allegations did not rise above "mere speculation" where allegations were "merely consistent with" discrimination and stopped "short of the line between possibility and plausibility").

Other allegations by Plaintiff are likewise devoid of any connection to a protected characteristic such that they support a reasonable inference of discrimination: (i) allegations regarding his "presence" or being "intimidating" are just as likely to be connected to Plaintiff's personality as any protected characteristic; and (ii) allegations that an African-American male employee mocked Plaintiff's "deep voice by doing an impression of him" are likewise devoid of any connection to a protected characteristic. Dkt. 10 ¶¶ 99-100. Each of these allegations fails to

12

create a reasonable inference that Plaintiff was discriminated against on account of his sex and, in particular, that his termination was based on his sex. Moreover, these allegations do not involve statements or comments by the particular decision-maker involved in Plaintiff's termination – Citrenbaum. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 296 (4th Cir. 2004) ("Even if we accept the proffered inference that Fultz was motivated by discriminatory and retaliatory animus towards Hill to issue the discrepancy reports, this fact does not transform Fultz into the actual decisionmaker . . ."); *Roane v. United Airlines, Inc.*, No. 1:16-cv-1004, 2017 WL 6667526, at *8 (E.D. Va. Oct. 12, 2017) ("Plaintiff's evidence concerning an allegedly discriminatory corporate culture is insufficient to raise a reasonable inference that the decisionmakers for the particular positions Plaintiff sought between 2011 and 2015 were motivated by discriminatory animus.").

The closest that Plaintiff comes to alleging conduct that approximates sex discrimination is his work on a diversity, equity, and inclusion project with several women, where the women received recognition from leadership. Dkt. 10 ¶ 103. Plaintiff alleges that when he asked Charity about why he was not recognized, she replied: "Because of black girl magic." *Id.* ¶ 104. Although this stray remark comes relatively close to intimating a sex-based animus, it does not move the claim across the line from possible to plausible. To begin with, Plaintiff does not allege that the decision-maker with respect to Plaintiff's termination, Citrenabum, had anything to do with the recognition that the women received. Moreover, the remark on which Plaintiff relies was not made by Citrenbaum and so, to the extent that the "black girl magic" remark implies sex-based animus, Plaintiff alleges no facts pursuant to which such animus can be attributed to Citrenbaum. *See Roane*, 2017 WL 6667526, at *8. Additionally, Plaintiff has alleged no facts from which the Court can determine that the recognition of the women but not Plaintiff was unwarranted. Plaintiff does

not allege that he provided the same level of contribution as the women and, indeed, does not even allege what kind of "recognition" the women received.  Because Plaintiff's allegations do not support a reasonable inference of sex discrimination, the Court will grant the Motion to Dismiss in this regard.

## IV. CONCLUSION

In sum, Defendant has only sought dismissal of Plaintiff's allegations of discrimination based on color, race, and sex in Count I of Plaintiff's Amended Complaint.  Plaintiff has successfully alleged facts from which a reasonable inference of color discrimination can be drawn based on Charity's comments to Plaintiff suggesting that she knew Plaintiff was treated unfavorably because of the color of his skin.  On the other hand, Plaintiff's allegations of race and sex discrimination fail to go beyond conclusory and speculative allegations regarding the motives of persons who were not the decisionmaker with respect to his termination – the only adverse employment action that Plaintiff has alleged.

The parties do not address futility of amendment, although Plaintiff does seek leave to amend any claim that is dismissed.  Because it is not immediately apparent to the Court that Plaintiff cannot allege some set of circumstances that would support a race or sex discrimination claim, the Court will provide Plaintiff with *one* further opportunity to amend his Complaint.

Accordingly, for the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 19) is GRANTED-IN-PART and DENIED-IN-PART.  The motion is denied insofar as it seeks dismissal of the claim of color discrimination in Count I.  The motion is granted insofar as it seeks dismissal of the race and sex discrimination claims in Count I; and it is

FURTHER ORDERED that Count I is DISMISSED to the extent it relies on a claim of race or sex discrimination; and it is

FURTHER ORDERED that Plaintiff may file any Amended Complaint within FOURTEEN (14) DAYS of the entry of this Memorandum Opinion and Order to amend Count VIII. If Plaintiff fails to file an Amended Complaint by that date, the Court will assume that Plaintiff is foregoing his race and sex discrimination claims in Count I and will issue a scheduling order.

It is SO ORDERED.

Alexandria, Virginia
January 15, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge

15